**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4739
_____

ZHONG BIAO YANG,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A072-766-263)
Immigration Judge: Honorable Henry S. Dogin

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 8, 2010

Before: MCKEE, Chief Judge,  HARDIMAN and COWEN, Circuit Judges

(Opinion filed: September 13, 2010)
_____

OPINION
_____

PER CURIAM.

Zhong Biao Yang, a native and citizen of China, petitions for review of an order

entered by the Board of Immigration Appeals ("BIA") denying Yang's motion to reopen

his exclusion/deportation proceedings.  For the reasons that follow, we will grant the

petition for review and remand for further proceedings.

Because the parties are familiar with the lengthy history of this case, we merely summarize the background relevant to our consideration of the issues presented. In 1994, Yang conceded that he is excludable from the United States, and he applied for asylum and withholding of exclusion. Yang claimed, inter alia, that he was persecuted in China based on his opposition to family planning policies. In 1996, the BIA affirmed an Immigration Judge's ("IJ") decision denying Yang's applications for relief.

In 2001, the BIA granted Yang's unopposed motion to reopen proceedings in light of passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, which altered the definition of "refugee" in INA § 101(a)(42) to include persons subjected to coercive family planning policies. In 2003, Yang and his wife (who was in deportation proceedings herself) testified before an IJ in New York. Among other things, Yang claimed that, as the father of three children (two born in the United States), he will be forcibly sterilized upon return to China for having violated the one-child policy.

The IJ denied relief, concluding that both Yang and his wife failed to establish past or future persecution. The BIA addressed the appeals of Yang and his wife separately, and it dismissed Yang's appeal in 2004. It held, inter alia, that Yang had failed to prove a well-founded fear that he will be forcibly sterilized. Yang sought review in the United States Court of Appeals for the Second Circuit, which, in 2005, vacated the BIA's decision in Yang's case under a "Stipulation and Order of Settlement and Dismissal"

2

entered between the parties. The Court of Appeals remanded for reconsideration on the sole issue of whether Yang's wife's forced IUD resulted in physical discomfort rising to the level of persecution, and, if so, whether such harm is a protected ground for relief.[1]

The BIA remanded to an IJ for fact-finding. After Yang was granted a change of venue, an IJ in New Jersey conducted a hearing on April 2, 2007, and denied relief. The IJ held, inter alia, that, even if the wife's forced IUD resulted in physical problems, the harm did not rise to the level of persecution.

On July 23, 2008, the BIA affirmed and dismissed Yang's appeal (the BIA issued a separate decision addressing the wife's appeal). The BIA noted that the only contested issue on Yang's appeal was whether his wife's forced IUD entitled Yang to relief. It held that, even if the wife's suffering due to the forced IUD is viewed as persecution, Yang is not entitled to relief based solely on his wife's persecution.

On October 16, 2008, Yang filed a motion to reopen in which he claimed, as he had previously, that he fears forced sterilization upon return to China. Yang attached numerous documents as exhibits to his motion, and he argued that the documents constitute new, previously unavailable evidence which establishes his prima facie eligibility for relief from exclusion.

---

[1] Yang's wife had an IUD forcibly inserted in 1994, shortly after giving birth to the couple's first child. She testified that she experienced physical problems with the IUD and had a private doctor remove it in 2000. She entered the United States later that same year and was placed in deportation proceedings. As mentioned, the couple then had two children in the United States, born in 2001 and 2002.

On December 18, 2008, the BIA denied the motion to reopen, holding that Yang's claim was previously litigated and he failed to establish eligibility for relief based on a claim that he will be forcibly sterilized. Yang petitioned this Court for review. After a motions panel granted a stay of Yang's removal, the government filed an unopposed motion to remand the matter so that the BIA could clarify which documents it had considered in denying the motion to reopen, and to address Yang's evidence further if appropriate. This Court granted the motion to remand.

On remand, the BIA issued a decision on November 30, 2009, in which it addressed Yang's evidence and again denied the motion to reopen. The BIA noted that it would only consider whether Yang's proffered evidence establishes that there has been a "relevant change in circumstances" in China since his 2003 hearing before the IJ. It held that Yang's evidence, to the extent that it is relevant and was previously unavailable, does not indicate that country conditions have changed materially such that Yang has an objective, well-founded fear that he will be persecuted upon return to China. Yang timely filed a petition for review in this Court.

We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review the November 30, 2009, decision denying Yang's motion to reopen. See Cruz v. Att'y Gen., 452 F.3d 240, 246 (3d Cir. 2006). We review the BIA's decision for abuse of discretion and will reverse only if the BIA is shown to have acted arbitrarily, irrationally, or contrary to law. Filja v. Gonzales, 447 F.3d 241, 251 (3d Cir. 2006).

4

Yang argues that the BIA erred as a matter of law by effectively treating his motion to reopen as untimely filed, which caused the BIA to apply an incorrect standard of review to the motion. Petitioner's Br. at 11-14. Yang notes that he moved to reopen the BIA's July 23, 2008, decision, which he contends was the "final administrative decision" in the case. Because the motion to reopen was filed within ninety days of July 23, he argues that the BIA erred in requiring him to show "changed circumstances" in China in order to reopen the case. We agree with Yang that the BIA erred.

In general, motions to reopen must be filed within ninety days from the date "the final administrative decision was rendered." 8 C.F.R. § 1003.2(c)(2). If a motion to reopen is timely filed, the standard that governs its consideration provides in relevant part that it "shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing[.]" Id. § 1003.2(c)(1). After expiration of the ninety-day period, an alien can seek to reopen the proceedings only in limited circumstances, such as where the alien claims "changed circumstances arising in the country of nationality ..., if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." Id. § 1003.2(c)(3)(ii).

Here, while the BIA twice stated in its decision that Yang's motion to reopen was "timely filed," it nevertheless assessed Yang's proffered evidence under the changed-circumstances standard that governs a motion to reopen filed after expiration of the

5

ninety-day limitations period. In effect, the BIA treated Yang's motion as an untimely filed request to reopen the 2003 hearing on his claim that he will be forcibly sterilized in China. But as both parties and even the BIA seem to acknowledge, the motion to reopen was timely filed within ninety days of the July 23, 2008, decision – which was the "final administrative decision" in Yang's case. See Filja, 447 F.3d at 253 (observing that "[t]he usual deadline for filing a motion to reopen is 90 days after entry of a final order of removal"). Consequently, because Yang's motion to reopen was timely, the BIA erred as a matter of law in applying the changed-circumstances standard that governs motions filed after expiration of the ninety-day limitations period.[2]

Although we are reluctant to remand this matter yet again, we are constrained to do so on the record before us. The BIA's decision to reject the evidence supporting Yang's motion to reopen was firmly intertwined with its erroneous application of the changed-

---

[2] While Yang suggests that "[t]he BIA's decision is nothing more than an attempt to foist a more onerous burden of proof on Yang," Petitioner's Br. at 14, the record does not support Yang's cynicism. In fact, the BIA's confusion over the governing standard seems to have resulted mainly from the protracted history of this case. As the BIA correctly observed, Yang's motion to reopen was based on the same claim, i.e., fear of forced sterilization, that he litigated before the IJ in 2003. The proceedings that followed the 2003 hearing were limited to whether his wife's forced IUD gave rise to a cognizable claim of persecution. Thus, the BIA properly viewed Yang's motion as seeking to reopen a claim that was litigated in 2003, although it then erred in failing to apply the standards that govern a timely filed motion to reopen such as Yang's. Yang himself may have exacerbated the confusion by suggesting in his motion to reopen that his "documents were previously unavailable *and show changed country conditions* from the time [Yang] was ordered excluded in 1997." A.R. at 31 (emphasis added). As explained, Yang did not need to show changed conditions to proceed with his timely filed motion to reopen.

circumstances standard.  As the BIA explained its holding: "the proffered evidence does not indicate that circumstances in China have changed materially since the last hearing such that [Yang] would have an objective[,] well-founded fear of persecution upon return to China."  A.R. at 6.  Where, as here, "the possibility exists that the [BIA]'s exercise of its discretion was tainted by consideration of improper or irrelevant factors, remand to the [BIA] is an appropriate remedy."  Chung v. INS, 602 F.2d 608, 612 n.3 (3d Cir. 1979).

For these reasons, we will grant the petition for review and remand this matter to the BIA for further proceedings on Yang's motion to reopen consistent with this Opinion.