NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2309
_____

ZHONG BIAO YANG,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A072-766-263)
Immigration Judge:  Honorable Henry S. Dogin
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 3, 2012
Before:  SCIRICA, CHAGARES and GREENBERG, Circuit Judges

(Filed:  January 6, 2012)
_____

OPINION OF THE COURT
_____

PER CURIAM.

Petitioner Zhong Biao Yang, a citizen of the People's Republic of China, seeks

review of the Board of Immigration Appeals' ("BIA") decision denying his motion to

reopen exclusion proceedings.  For the following reasons, we will deny the petition for

review.

The parties are familiar with the lengthy history of this case. Accordingly, we will summarize the background relevant to our consideration of the issue presented. In 1994, Yang was charged with being excludable from the United States. He conceded the charge, but applied for asylum and withholding of exclusion, claiming that he was persecuted based on his opposition to China's family planning policies. In 1996, the BIA affirmed the Immigration Judge's (IJ) decision denying his application for relief.

For the past fifteen years, Yang's case has bounced between the United States Court of Appeals for the Second Circuit, this Court, the BIA, and the IJ. Currently at issue is Yang's 2008 motion to reopen, in which he submitted additional evidence supporting his claim that he had a well-founded fear of being forcibly sterilized upon his return to China because he has violated the family planning policy by having three children (two of whom were born in the United States). Yang's evidence included a letter from the Tang Xia village committee, the village's birth control regulation and villager agreement, and letters from two of Yang's cousins stating that they had been sterilized. The letter from Yang's cousin, Chen, Zu-Kang, stated that he lives in Dong Bian village and that in June 2007, he was sterilized after having two children. Yang's female cousin, who lives in Tang Xia village, submitted a statement asserting that she was sterilized in May 2007 after she gave birth to a second child. The BIA denied the motion in December 2008, stating that Yang's forcible sterilization claim had been previously litigated. Yang filed a petition for review and in August 2009, we granted the

Government's motion to remand so that the BIA could clarify which documents it had considered and to "address the evidence, as appropriate."

In November 2009, the BIA again denied the motion to reopen, and Yang filed a petition for review. On September 13, 2010, we issued a decision remanding the case to the BIA. Yang v. Att'y Gen., C.A. No. 09-4739, 393 F. App'x 935 (3d Cir. 2010). We determined that, although the BIA acknowledged that Yang's 2008 motion to reopen was timely filed, it assessed it as untimely and improperly required him to show changed country conditions to excuse the untimeliness.

On remand, the BIA denied the motion to reopen in a lengthy decision. It determined that Yang did not "submit sufficient evidence to indicate that he is prima facie eligible for asylum," and thus that he did not meet his burden of establishing that he was entitled to the reopening of his proceedings. In particular, the BIA concluded that the evidence that Yang submitted did not help establish his prima facie eligibility for relief because the documents were either unauthenticated or did not suggest that he "had a reasonable possibility of establishing a well-founded fear of facing sterilization upon his return to China."

Yang now seeks review of the BIA's decision.

II.

We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a), and review a decision denying a motion to reopen for abuse of discretion. Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004). Under this standard, we may grant relief

from the BIA's decision only if it is "arbitrary, irrational, or contrary to law." Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002) (internal citation omitted).

If, as in this case, a motion to reopen is timely filed, a petitioner must make a prima facie showing that he is entitled to asylum. Guo, 386 F.3d at 563. That is, he or she "must produce objective evidence that, when considered together with the evidence of record, shows a reasonable likelihood that he [or she] is entitled to relief." Huang v. Att'y Gen., 620 F.3d 372, 389 (3d Cir. 2010). To qualify for asylum based on a well-founded fear of sterilization, Yang had to show both a genuine, subjective fear and an objectively reasonable basis for that fear. See Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005). The BIA determined that the evidence Yang submitted was inadequate to support a prima facie showing of future persecution. We discern no error in this conclusion and disagree with Yang's assertion that the BIA held him to an improperly high burden of proof.

Yang's appellate brief focuses on the BIA's determination that the documents that he submitted from China were insufficient to establish that he was eligible for reopening for further proceedings. However, the BIA properly discounted the documents from the Tang Xia village committee because they were unauthenticated. See Chen v. Att'y Gen., No. 09-3459, --- F.3d ---- 2011 WL 923353, at *4-5 (3d Cir. 2011). At this point, Yang argues only that he should not be required to authenticate the documents because it would be nearly impossible to do so. He ignores, however, that a petitioner is permitted to authenticate documents by other means. See id. at *4.

4

The BIA also determined that the statements from Yang's cousins did not contain "sufficient information to establish that" their situation "is analogous to his own." The BIA acknowledged that the letters "documented instances of sterilization" but noted that one of Yang's cousins "is female and [that] the other resides in a different village." Additionally, the BIA observed that it was unclear whether Yang's "family situation" would be considered the same as his cousins', who were living in China when their children were born, and who were sterilized immediately after the birth of their second children. As support for its conclusion that the letters from Yang's cousins were of little value, the BIA cited to Matter of H-L-H- & Z-Y-Z-, 25 I & N Dec. 209, 216 (BIA 2010). We have previously stated that the BIA's opinion H-L-H & Z-Y-Z- contains a "comprehensive discussion that persuasively addresses many of the issues before us." Chen, 2011 WL 923353, at *2. And here, as in H-L-H-, "[n]one of the individuals who provided letters . . . claims to have given birth to children in the United States or to know of anyone who has been forcibly sterilized or otherwise subjected to sanctions rising to the level of persecution after having given birth in the United States." 25 I. & N. Dec. at 216. The BIA did not abuse its discretion by determining that the statements from Yang's cousins were insufficient to establish that he was entitled to reopening his exclusion proceedings.

We have considered Yang's remaining arguments and conclude that they are meritless. We agree with the BIA that "the record supports the finding that [Yang] does

not have a well-founded fear" of forcible sterilization.  Accordingly, we will not disturb

the BIA's denial of Yang's motion to reopen.